IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JOSEPH RAY MORRISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:20-CV-87 (MTT) |
| | ) |
| WARDEN JERMAINE WHITE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiff Joseph Ray Morrison moves for reconsideration of the Court's Order (Doc. 53) adopting United States Magistrate Judge Charles H. Weigle's Recommendations (Docs. 34; 47). Doc. 58. For the reasons discussed below, Morrison's motion (Doc. 58) is **DENIED**.

**I. BACKGROUND**

On February 23, 2020, Morrison filed a complaint alleging violations of his rights under 42 U.S.C. § 1983. Doc. 1. The defendants subsequently moved to dismiss Morrison's claims, arguing that Morrison, among other things, failed to exhaust his administrative remedies before filing suit. Docs. 21; 21-1 at 4-12. Morrison then moved for a preliminary injunction (signed June 13; received July 14),[1] requesting more time in

---

[1] The postmark on the envelope transmitting the motion is illegible, but clearly it was mailed almost a month after it was signed. In cases involving *pro se* prisoners, the "court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015) (quoting *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009)). But in Morrison's filings, there is a consistent lag between the signing and mailing of his pleadings, which the Court will note in this Order. Occasional delays in prison mail are not unusual, but the number of delays here could suggest

the prison law library and to be moved to a cell with better lighting. Docs. 27 at 5-6; 27-2. Morrison also moved for an extension of time to respond to the motion to dismiss (signed July 6; postmarked July 10), and the Magistrate Judge gave him until August 17, 2020. Docs. 25 at 2-3; 25-1; 26. On July 13, Morrison moved for "an injunction to make the Washington State Prison officials … make copies of [Morrison's] legal work in relation to his cases" (signed July 13; postmarked July 14). Docs. 30; 30-1. Morrison then moved for a second extension of time to respond to the motion to dismiss (signed August 3; postmarked August 17). Docs. 33 at 2-3; 33-1. On August 6, Morrison again moved "for a Temporary Injunction to compel the Washington State Prison officials to immediately start making copies of [Morrison's] legal work in relation to his case" (signed August 6; postmarked September 16). Docs. 37; 37-1.

On August 19, 2020, the Magistrate Judge granted Morrison's second motion for an extension of time to respond to the motion to dismiss and gave him until September 14. Doc. 34. The Magistrate Judge also recommended denying Morrison's motions for an injunction. *Id*. Morrison then moved for a third extension of time to respond to the motion to dismiss and his first extension to object to the Magistrate Judge's Recommendation (signed August 31; postmarked September 16). Docs. 35; 35-1; 36; 36-1. The Magistrate Judge gave Morrison until October 14, 2020 to respond to the motion and submit objections. Doc. 38. On September 28, Morrison signed his nineteen-page response to the motion to dismiss and a motion for leave to file an amended complaint; both were postmarked October 29, 2020. Docs. 43 at 19; 43-1; 44

---

that Morrison is predating time sensitive pleadings. The Court does not reach that conclusion, although it seems warranted.

at 18; 44-29. On September 29, Morrison signed his objection to the Recommendation; it was postmarked October 15. Docs. 40 at 7-8; 40-1.

The Court adopted the Magistrate Judge's recommendation to deny Morrison's preliminary injunction motion on October 15, 2020. Docs. 34; 39. Also on October 15, Morrison signed a motion for leave to file a supplemental complaint; it was postmarked October 26. Docs. 41 at 2-3; 41-2. On October 30, Morrison signed a motion for reconsideration of the Court's Order (Doc. 39), adopting the Recommendation. Doc. 42 at 4. In his motion for reconsideration, Morrison contended, correctly, that the Court adopted the Recommendation prematurely given the third extension of time to object he had received. Doc. 42. That motion was postmarked the same day Morrison signed the motion, suggesting that Morrison can get his filings mailed timely when he wants. Docs. 42 at 4; 42-2. The Court granted Morrison's motion (Doc. 42) and vacated its Order (Doc. 39) adopting the Recommendation. Doc. 48.

Then, on December 1, 2020, the Magistrate Judge recommended granting the defendants' motion to dismiss (Doc. 21) because Morrison failed to exhaust his administrative remedies.[2] Doc. 47. On December 14, Morrison signed a motion for an extension of time to object to that Recommendation (Doc. 47), and the Magistrate Judge gave Morrison until February 16, 2021—over two months—to object. Docs. 49 at 2-3; 50. Morrison's motion was postmarked December 14, again the same day he signed it. Docs. 49 at 2-3; 49-1. Morrison did not timely object, and on February 22,

---

[2] The Magistrate Judge also denied two motions filed by Morrison. The Magistrate Judge denied Morrison's motion to supplement his complaint (Doc. 41), in part, because "[Morrison's] supplemental allegations [had] no bearing on the issue of exhaustion prior to the commencement of [his] action." Doc. 47 at 3. The Magistrate Judge also denied Morrison's motion to file an amended complaint (Doc. 44) after construing it as one for leave to amend because Morrison "[sought] to raise the claim of excessive force that he [was] already litigating in *Morrison v. White et al.*, Case No. 5:20-cv-156, along with a host of other possible conditions of confinement issues." *Id*. at 4.

-3-

2021, the Court adopted both Recommendations (Docs. 34; 47), and judgment was entered. Docs. 53; 54.

But on March 4, 2021, the Court received yet another request from Morrison to extend his deadline to submit objections. Doc. 56. That motion was allegedly signed February 14, two days before the February 16 extended deadline, but it was postmarked March 2. Docs. 56; 56-1. On March 22, the Court received, at long last, Morrison's objections to the Recommendation (Doc. 47) (signed March 12; postmarked March 18). Docs. 57; 57-5. For reasons lacking foundation in fact, law, or equity, the Court granted Morrison's last extension request (Doc. 56) and announced that it would consider Morrison's March 22 objections and ordered the defendants to respond, which they did. Docs. 59; 60; 63.

## II. STANDARD

Pursuant to Local Rule 7.6, "Motions for Reconsideration shall not be filed as a matter of routine practice." M.D. Ga. L.R. 7.6. Indeed, "[r]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Bingham v. Nelson*, 2010 WL 339806, at *1 (M.D. Ga.) (internal quotation marks and citation omitted). It "is appropriate only if the movant demonstrates (1) that there has been an intervening change in the law, (2) that new evidence has been discovered which was not previously available to the parties in the exercise of due diligence, or (3) that the court made a clear error of law." *Id*. "In order to demonstrate clear error, the party moving for reconsideration must do more than simply restate his prior arguments, and any arguments which the party inadvertently failed to raise earlier are deemed waived." *McCoy v. Macon Water Authority*, 966 F. Supp. 1209, 1223 (M.D. Ga. 1997).

-4-

## III. ANALYSIS

Morrison does not argue that there has been a change in the law, that new evidence has been discovered, or that the Court made a clear error of law. Therefore, his motion for reconsideration is denied. But the Court said that it would consider his objections and it has. After consideration, it remains clear that Morrison failed to exhaust his administrative remedies before filing his complaint. *See generally* Docs. 57; 57-1.

Morrison's *relevant* objections to the Magistrate Judge's conclusion that Morrison failed to exhaust raise nothing new, and the Magistrate Judge's analysis is dispositive of those objections:

> The record shows that [Morrison] filed two original grievances that relate to his claims of denial of access to courts. Those grievances are numbered 292567 (Doc. 21-6, p. 2) and 302513 (Doc. 21-9, p. 2). Both original grievances were denied, and [Morrison] failed to file a central office appeal for either grievance. [Morrison] argues, though, that the grievance appellate process was not available to him because prison authorities refused to provide the appropriate form. *See* (Doc. 43, pp. 2, 6-7). *See also Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) ("An inmate … must exhaust available remedies, but need not exhaust unavailable ones").
>
> Under *Turner*'s[3] first step of review, [Morrison's] allegations regarding lack of access to the paper form for filing a central office appeal must be accepted as true and construed in his favor. Arguably, these allegations suggest that [Morrison] was unable to file a central office appeal either because of "machination" on the part of prison authorities or because the grievance appellate procedure was "practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859.

---

[3] The Eleventh Circuit provides a two-step process for analyzing a motion to dismiss based on a prisoner's failure to exhaust administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008). First, the court "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. But if the motion is not granted under the first step, the court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. … Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*.

At *Turner*'s second step of review, however, the record does not support [Morrison's] allegations but instead supports the finding that [Morrison] simply failed to take reasonable steps to submit a central office appeal. In significant part, this conclusion flows from the fact that [Morrison] actually did file a central office appeal regarding grievance no. 302513. *See* (Doc. 21-9, p. 6). This central office appeal, filed in February 2020, was rejected on March 10, 2020, after the commencement of this action. Hence, there is no question that [Morrison] failed properly to exhaust grievance no. 302513. *See Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (citing *Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*)).

The fact that [Morrison] was able to obtain a central office appeal form for grievance no. 302513 further suggests that the grievance process was also available to [Morrison] for grievance no. 292567. So, too, do other records. For example, [Morrison] received a response to his original grievance no. 292567 on August 29, 2019, (Doc. 21-6, p. 3), and the record shows that [Morrison] subsequently was able to file two central office appeals regarding other, unrelated grievances in December 2019. (Doc. 21-7, p. 7) (grievance no. 297292), (Doc. 21-8, p. 7) (grievance no. 297294). [Morrison] thus had access to central office appeal forms, at the latest, by early December 2019. From that date, had such forms truly been unavailable earlier, [Morrison] should have "filed an out-of-time grievance and then shown good cause for its untimeliness." *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir. 2008). [Morrison's] filings suggest that such good cause may have arisen from [Morrison's] confinement in administrative segregation quarters. *See* (Doc. 43, p. 7) ("[Morrison] further had the issue of being in segregation and was limited [in] the availability of accessing appeal forms").

A declaration from Officer Crenshae Burden, a grievance counselor at Washington State Prison, indicates that [Morrison] made no requests for central office appeal forms from roughly September to December 2019. (Doc. 21-10, ¶¶ 4-5). Officer Burden's declaration thus suggests that [Morrison] did not, in fact, lack access to central office appeal forms at any time. Even if [Morrison] did lack access to central office appeal forms from September to December 2019, … [Morrison] failed to exhaust the grievance process by failing to submit an out-of-time central office appeal when those forms became available in early December 2019. *Bryant*, 530 F.3d at 1379.

Moreover, Officer Burden's declaration also indicates that central office appeals may alternatively be submitted through an electronic kiosk that is available even to prisoners housed in administrative segregation quarters. (*Id.*, ¶ 6). Based on this fact, even if [Morrison] briefly lacked access to paper central office appeal forms, the alternative means of submitting

grievances through the kiosk rendered both steps of the applicable two-step grievance process "available" to [Morrison]. As a result, and because [Morrison] failed to exhaust the second step of this process prior to commencing this action, [Morrison's] complaint should be dismissed without prejudice for failure to exhaust administrative remedies.

Doc. 47 at 6-8.

In his objections, Morrison argues that because he was not provided a copy of the PLRA, "there [was] absolutely NO way possible for [him] to know about the exhaustion rule" before filing his complaint. Doc. 57 at 7. Morrison further argues that he "tried with due diligence" four separate times through various prison authorities to obtain grievance appeal forms. *Id*. at 7-8. Morrison asserts that "the fact that he filed grievances at other times showed only that forms were available on the dates those grievances were filed, and not that such forms were always available." *Id*. at 8 (internal quotation marks omitted). Morrison also asserts that statements made by two prison officials denying that Morrison requested an appeal form, and "claiming … [he] could use the kiosk in segregation to file a grievance and its appeal" are "absolutely ridiculous." *Id*. at 8-9. Morrison says that "there is NO WHERE ON THE KIOSK to file grievances nor appeals." *Id*. at 8.

Through a "Certification" and three "witness statements," Morrison contends that he never "observed" Washington State Prison's grievance policies and reiterates his argument that the kiosk in "J2 dorm" did not have "[anything] related to any grievance." Docs. 57 at 8-9; 57-1; 57-2; 57-3; 57-4.

The defendants respond that Morrison's contentions, "considered in light of the entire record, are not credible." Doc. 63 at 2. They argue that all inmates, including Morrison, "are notified of the grievance process upon entering [Georgia Department of

Corrections] custody." *Id*.; *see also* Docs. 21-2 at ¶¶ 3-5; 21-3; 21-4.  They also assert that inmates "are provided a copy of the Orientation Handbook for Offenders, which includes instructions on the grievance procedure."  Docs. 63 at 2; 21-2 at ¶¶ 3-5; 21-3; 21-4.  The defendants contend that inmates also "have access to a copy of the Grievance [Standard Operating Procedures] at the facility or center library, and [inmates were] notified of amendments made to the Grievance SOP effective March 19, 2019, and then again on May 10, 2019."  Docs. 63 at 2; 21-2 at ¶¶ 3-5; 21-3; 21-4.  According to the defendants, Morrison's grievance history establishes "that he knows how to submit grievances and grievance appeals, and further shows that he had access to the papers needed to submit grievances and grievance appeals."  Docs. 63 at 2; 21-5.

The defendants also argue that Morrison's grievance history at Washington State Prison establishes his awareness of the appeal process.  Doc. 63 at 3.  The defendants assert that Morrison "made no requests for central office appeal forms from September to December 2019."  *Id*. at 4; *see also* Docs. 21-5; 21-10 ¶¶ 4-5.  Further, the defendants say that appeal forms are accessible through a "GOAL Device or Kiosk" that "all inmates at [Washington State Prison], including those housed in administrative segregation" have access to.  Doc. 63 at 4.

Morrison's claims of ignorance and lack of access to the necessary appeal forms are indeed belied by his grievance history, the accuracy of which Morrison does not dispute.  Doc. 57 at 7.  Morrison filed multiple grievances and appeals from April 28, 2019 to February 1, 2020; clearly he was aware of Washington State Prison's grievance policy and he had access to appeal forms.[4]  *See Wright v. Langford*, 562 F. App'x 769,

---

[4] The statements Morrison submitted were made by prisoners at Phillips State Prison.  *See generally* Docs. 57-2; 57-3; 57-4.  However, statements concerning the availability of appeal forms at Phillips State

776 (11th Cir. 2014) (finding reasonable the use of a prisoner's grievance history to conclude that the prisoner's professed ignorance of the prison's grievance policy was not credible) (citing *Bryant v. Rich*, 530 F.3d 1368, 1377-78 (11th Cir. 2008)); Docs. 21-5; 21-6; 21-7; 21-8; 21-9.

And, as the Magistrate Judge points out, Morrison did appeal the denial of grievance 302513. Doc. 21-9 at 2. This grievance was denied on February 20, and Morrison acknowledged receipt of the denial on February 26. *Id*. at 5. But contrary to Morrison's assertions that he was unable to access the necessary appeal forms, Morrison timely appealed the grievance denial on February 27.[5] *Id*. at 6. Clearly, Morrison's claim that he had no access to appeal forms is not credible.

Accordingly, the record supports the finding that Morrison failed to exhaust his administrative remedies before filing a complaint in federal court.

## IV. CONCLUSION

For the reasons discussed above, Morrison's motion for reconsideration (Doc. 58) is **DENIED**.

**SO ORDERED**, this 12th day of July, 2021.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT

---

Prison bear no relevance to Morrison's failure to exhaust administrative remedies at Washington State Prison.

[5] Morrison did not wait until the appeal process concluded before filing his complaint. Morrison appealed the denial of grievance 302513 on February 27, 2020, and the appeal was denied on March 10. Doc. 21-9 at 6-7. However, Morrison filed his complaint on February 23. Doc. 1 at 25. Thus, Morrison's complaint was filed prematurely. *See Harris*, 216 F.3d at 974.